Fredler Breneville, Esq.
BBO #: 696529
EOIR #: KK391069
Breneville Law Offices, LLC
500 North Main Street, Suite 301
Randolph, MA 02368
(617) 448-6037
(781) 961-6970
(781) 961-0012(Fax)

DETAINED

**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF MASSACHUSETTS**
**BOSTON DIVISION**

| | |
|---|---|
| **Lawens Joseph, A#: 218-039-019**<br><br>Petitioner,<br><br>v.<br><br>**Antone Moniz**, Warden of Plymouth Correctional Facility;<br>**Dave Wesling,** Acting Director of Boston Field Office, U.S. Immigration and Customs Enforcement;<br>**Kristi Noem**, Secretary of the U.S. Department of Homeland Security; and<br>**Pamela Bondi**, Attorney General of the United States, in their official capacities,<br><br>Respondents. | Case No. 1:26-cv-10822-ADB<br><br>**REPLY TO RESPONDENTS' OPPOSITION TO PETITION WRIT OF HABEAS CORPUS** |

## INTRODUCTION

On February 23, 2026, the Respondents filed an answer to the Petitioner's Petition for Writ of Habeas Corpus. In its answer, the Respondents argued that this Court cannot extend the writ of habeas corpus unless an individual demonstrates that he "is in custody in violation of the Constitution or laws or treaties of the United States," citing 28 U.S.C. § 2241(c)(3). This brief is in reply to the Respondents' answer and provides an update on the Petitioner's case.

## BACKGROUND

1. On February 12, 2026, the Petitioner filed a Petition for writ of Habeas Corpus, arguing that the Respondents violated his Fifth Amendment right to due process under the United States Constitution because he has been detained since his arrest at the Plymouth Correctional Facility on November 20, 2025.

2. Petitioner requested a bond hearing with the Boston Immigration Court. On December 15, 2025, the Immigration Judge denied his motion because the court lacked jurisdiction to consider release on bond since the Petitioner is an arriving alien seeking admission at a port of entry.

3. The Immigration Court set the Petitioner's individual hearing on the asylum application for February 19, 2026. Although the Petitioner filed two successive motions to continue the individual hearing, due to the pendency of the Habeas Corpus Petition, the Court denied those motions. (See Exhibit A).

4. On February 19, 2026, the Immigration Court denied the Petitioner's application for asylum. The Petitioner filed an appeal to the BIA on the asylum application on March 11, 2026. (See Exhibit B).

5. On March 9, 2006, the Woburn District Court of Massachusetts dismissed the Petitioner's charges of assault and battery, which was the primary reason for which he was arrested by ICE on November 20, 2025. (See Exhibit C).

6. The Petitioner reiterated his writ of habeas corpus during the pendency of his appeal on his asylum application before the BIA because his prolonged detention violates his Fifth Amendment right of due process under the United States Constitution, and is contrary to laws and regulations, and notably this Court's recent decision, ***Orellana v. Moniz***. 25-cv-12664, 2025 U.S. Dist. LEXIS 262638.

## STANDARD OF REVIEW

Under Section 2241, federal courts may grant habeas corpus relief to individuals who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The highest duty of a court under our constitutional system is the careful examination and adjudication of these habeas corpus petitions. See ***Harris v. Nelson***, 394 U.S. 286, 292, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969); ***Burns v. Wilson***, 346 U.S. 137, 148, 73 S. Ct. 1045, 97 L. Ed. 1508 (1953) (concurring statement of Frankfurter, J.). The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." ***Fay v. Noia***, 372 U.S. 391, 400 (1963) (emphasis added). The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application. ***Yong v. I.N.S.***, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted). To grant a writ of habeas corpus, the Court must determine: (1) whether Petitioner is in the custody of Respondents and (2) whether such custody violates constitutional or federal law. ***Ercelik v. Hyde***, 2025 U.S. Dist. LEXIS 88412.

## ARGUMENT

The Respondents argued that the Petitioner's detention is authorized by statute, regulation, and comports with the Constitution. The Respondents are mistaken.

### I. The Petitioner's Detention Is Contrary to Laws, Statutes, and Regulations

The Respondents argued that the Petitioner is an arriving alien and, as such, is subject to mandatory detention while his fear of persecution is assessed in Immigration Court and before

the BIA, citing 8 U.S.C. § 225(b)(1)(B)(ii). (See Respondents' Opposition to Habeas Petition, p. 10). Consequently, Respondents argued that the Petitioner is not entitled to a bond hearing. Id.

Respondents' argument is based on its nationwide policies that they recently enacted which mandate the detention of all persons who entered without admission or parole, regardless of whether they were apprehended upon arrival. See ***Matter of Yajure Hurtado***, 29 I. & N. Dec. 216 (BIA 2025).

The Respondents intentionally misclassify bond-eligible § 1226(a) detainees as bond-ineligible § 1225(b)(1) detainees. Section 1225(b)(1) clearly pertains to "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." See 8 U.S.C. 1225(b)(1). That section states that "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1). The language of Section 1225(b)(1) does not apply to Petitioner because he was paroled when he entered the United States. (See also Exhibit D).

Although the Respondents conceded that the Petitioner was paroled when he entered the United States on January 12, 2024, and was paroled until the date of January 9, 2026, prior to his arrest, Respondents argued that Petitioner "remains an arriving alien applicant for admission subject to Section 1225(b)(1)'s detention provisions." (See Respondents' Opposition to Habeas Petition, p. 10).

Contrary to the Respondent's classification, the Petitioner is subject to Section 1226, which states that: "On a warrant issued by the Attorney General, an alien may be arrested and

detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole; but …."

The Supreme Court has recognized the scope of these two detention statutes. It described § 1225 as operating "at the Nation's borders and ports of entry where the Government must determine whether [a noncitizen] seeking to enter the country is admissible." ***Jennings v. Rodriguez,*** 583 U.S. 281, 287 (2018). And the Court described § 1226 as the detention authority for noncitizens who are "already in the country." Id. at 289; see also ***Castañon-Nava***, 161 F.4th at 1061 (observing distinction made in Jennings between statutes applicable to noncitizens "seeking admission" versus those "already in the country"). Indeed, the government itself in ***Jennings*** described § 1226 as governing the detention of noncitizens "who are already inside the United States," while describing § 1225(b) as "the most recent iteration of a statutory framework that, for a century, has provided for the exclusion of inadmissible aliens arriving at the Nation's borders," Petitioners' Brief, ***Jennings v. Rodriguez***, 583 U.S. 281 (2018) (No. 15–1204), 2016 WL 5404637 at *4, 19.

Section 1226's text applies to noncitizens who entered without inspection and allows their release on bond. Section 1226 authorizes the arrest and detention of noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). The text of its two key provisions—one allowing for release, and one articulating exceptions—shows that both apply to noncitizens who entered the country without inspection.

Section 1226(a) permits releasing a noncitizen "on bond" or other conditions during removal proceedings. Noncitizens subject to § 1226(a) may seek that release in a bond hearing in front of an immigration judge. 8 C.F.R. §§ 1003.19, 1236.1(d)(1). The provision contains no exception based on the circumstances of a noncitizen's entry into the country and, instead, applies to noncitizens who are "arrested" and placed in removal proceedings—i.e., § 1226(a) applies both to noncitizens who have not been admitted, and are charged under "inadmissibility" grounds, see 8 U.S.C. § 1182, and to noncitizens who were previously admitted and are charged under "deportability" grounds, see 8 U.S.C. § 1229a(a)(1),(2), (c)(2)(A), (e)(2)(A). See 8 U.S.C. § 1226(a). The provisions of § 1226(a) that allow for release apply "[e]xcept as provided in subsection (c)." In turn, § 1226(c) requires detention of noncitizens during proceedings on certain criminal grounds. Tellingly, since IIRIRA, § 1226(c) has enumerated specific deportability and inadmissibility grounds that trigger mandatory detention, confirming § 1226's application to EWI noncitizens, who are subject to inadmissibility grounds. See 8 U.S.C. § 1226(c)(1)(A), (c)(1)(D), (c)(1)(E), (c)(4); Preap, 586 U.S. at 397, 409; Pub. L. No.104–208, 110 Stat. 3009, § 303(a) (1996); cf. 8 U.S.C. § 1252(a)(2) (1996).

Because § 1226(c) is an exception to bond eligibility under § 1226(a), the inclusion of categories of EWI noncitizens in § 1226(c) confirms that EWI noncitizens fall under the umbrella of § 1226 and are generally bond eligible under § 1226(a). Section 1226(c) is thus the exception that confirms the rule: § 1226(a) generally affords bond to inadmissible noncitizens—including those, like Petitioners, who are alleged to have entered the country without inspection—unless the exception in § 1226(c) applies.

2. The Petitioner's Detention Violates the United States Constitution

As the Petitioner in ***Orellana*** argued, Congress's decision to preserve access to bond proceedings as the default rule for noncitizens in the United States also accords with constitutional principles that were well established by 1996. (See Brief of Petitioner-Appellee, **Orellana v. Moniz**, Nos. 25-2152, 26-1094, p. 34, (1st Cir., filed 03/10/2026). All people inside the United States have due process rights, including noncitizens who originally entered without permission. See ***Zadvydas v. Davis***, 533 U.S. 678, 693 (2001); ***A. A. R. P. v. Trump***, 605 U.S. 91, 94 (2025). And civil detention within the United States for any purpose requires strong due process protections. See ***Addington v. Texas***, 441 U.S. 418, 425 (1979); see also ***Kansas v. Hendricks***, 521 U.S. 346, 357 (1997), ***Foucha v. Louisiana***, 504 U.S. 71, 80–81 (1992); ***United States v. Salerno***, 481 U.S. 739, 755 (1987). It is therefore entirely unsurprising that, when crafting a detention scheme for people arrested inside the United States on civil immigration charges, Congress preserved bond eligibility as the default rule consistent with these longstanding principles. See 8 U.S.C. § 1226(a).

The Respondents strongly relied on ***Thuraissigiam*** to argue that the Petitioner is an applicant for admission and "has only those rights regarding admission that Congress has provided by statute, " citing ***Dep't of Homeland Sec. v Thuraissigiam***, 591 U.S. at 139-40. The Respondents further argued, citing ***Thuraissigiam***, "[w]hen an alien arrives at a port of entry – for example, an international airport – the alien is on U.S. soil, but the alien is not considered to have entered the country…" Id. at 139. The Respondents omitted to argue that the court reached that conclusion in ***Thuraissigiam*** because the alien attempted to enter the country illegally and was apprehended just 25 yards from the border; therefore, he had no entitlement to procedural rights other than those afforded by the statute. (See ***Thuraissigiam***, 591 U.S. 103 (2020).

Unlike the alien in ***Thuraissigiam***, Petitioner was not apprehended at the "threshold of initial entry." He was not even detained upon entering the country. He was paroled. He was apprehended almost

two years after his continuous presence in the country. As the Petitioner in ***Orellana*** correctly argued: "To suggest that Petitioner be treated as functionally still at the border stretches the entry fiction beyond breaking point." (See Brief of Petitioner-Appellee, ***Orellana v. Moniz***, Nos. 25-2152, 26-1094, p. 40, (1st Cir., filed 03/10/2026).

That interpretation is inconsistent with the longstanding government practice of recognizing due process rights for noncitizens already in the country. In March 1997, prior to the IIRIRA's enactment, the DOJ promulgated regulations reaffirming that noncitizens "who are present without having been admitted or paroled will be eligible for bond." 62 Fed. Reg. at 1032. That practice was consistent with decades of prior practice, in which noncitizens not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

The government recently rejected this well-established understanding of the statutory framework and reversed decades of practice. ***Matter of Yajure Hurtado***, 29 I. & N. Dec. 216 (BIA 2025).

Dozens of federal courts have rejected the Respondents' new interpretation of the INA's detention authorities. ***Orellana v. Moniz***, 25-cv-12664, 2025 U.S. Dist. LEXIS 262638. In ***Orellana,*** this Court declares that aliens in the same situation as the Petitioner are entitled to a bond hearing upon request to the Immigration Court. ***Orellana v. Moniz***. 25-cv-12664, 2025 U.S. Dist. LEXIS 262638. This Court should maintain that same holding in this case and order the immediate release of the Petitioner.

## CONCLUSION

For the foregoing reasons, this Court should find that the Petitioner's detention violates the Due Process Clause of the Fifth Amendment of the United States Constitution and the INA regulations. This Court should issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately pending his appeal to the BIA and grant any further relief that it deems just and proper.

Respectfully submitted,

Lawens Joseph

By His Attorney

Fredler Breneville, Esq.
BBO#: 696529
EOIR#: KK39069
Breneville Law Offices, LLC
500 North Main Street, Suite 301
Randolph, MA 02368
(617) 448-6037/ (781) 961-6970
info@brenevillelawoffices.com

Date: 03/16/2026

## CERTIFICATE OF SERVICE

I, Fredler Breneville, Counsel for the Petitioner, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: 03/16/2026

Fredler Breneville, Esq.