UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LAWENS JOSEPH,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ et al.,<br><br>Respondents. | * * * * * * * * * * * * * | Civil Action No. 26-cv-10822-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Currently before the Court is petitioner Lawens Joseph's 28 U.S.C. § 2241 amended habeas corpus petition. [ECF No. 10-1 (the "Amended Petition" or "Am. Pet.")].[1] For the following reasons, Petitioner's Amended Petition is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

Petitioner is a native and citizen of Haiti. [Am. Pet. ¶ 20]. He entered the United States on January 12, 2024, applied for admission, and was paroled into the United States under 8 U.S.C. § 1182(d)(5). [Id.]; [ECF No. 8 ("Resp.") at 3]. At some point in 2025, Petitioner's parole was terminated, [Resp. at 3], and on August 8, 2025, ICE issued Petitioner a Notice to

[1] The Court hereby **GRANTS** Petitioner's motion for leave to amend his Petition, [ECF No. 10], and considers Petitioner's proposed Amended Petition, [ECF No. 10-1], as the operative Petition.

Appear ("NTA"), placing him in removal proceedings. [Id.]. The NTA states that Petitioner is an arriving alien inadmissible to the United States, his humanitarian parole has been terminated, and he is not in possession of a valid visa. [Id.]. Petitioner was arrested by Immigration and Customs Enforcement ("ICE") on November 20, 2025. [Am. Pet. ¶ 22]. On February 9, 2026, an immigration judge ordered Petitioner removed from the country, [Resp. at 3–4], and Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"), which as of the last update provided to the Court was currently pending, [Am. Pet ¶ 25].

### B. Procedural History

Petitioner filed his Petition on February 12, 2026. [ECF No. 1]. Respondents filed their Response on February 23, 2026. [Resp.]. Petitioner filed a motion for leave to amend his Petition, attaching the Amended Petition, on June 11, 2026. [ECF No. 10]; [ECF No. 10-1].

## II. ANALYSIS

Respondents contend that Petitioner's detention is authorized by 8 U.S.C. § 1225(b) because he applied for admission as an arriving alien and was released into the country on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5). [Resp. at 10–11]. They argue that his parole into the country "shall not be regarded as an admission," in accordance with the language of § 1182(d)(5)(A), and that once his parole was terminated, he was required to "be restored to the status he had been in at the time of his parole," which they contend was mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). [Resp. at 11–13]. According to Respondents, Petitioner has been, and is currently, an applicant for admission under § 1225(b)(2), and his detention is therefore mandatory pending his proceedings in Immigration Court. [Id. at 12].

Petitioner, on the other hand, contends that he may only be detained, if at all, pursuant to 8 U.S.C. § 1226(a) and, in the alternative, that his mandatory detention without a bond hearing violates his due process rights. [Am. Pet. ¶¶ 36–42].

With respect to the statutory basis for Petitioner's detention, the Court agrees with Respondents and several other sessions of this Court that 8 U.S.C. § 1225, rather than § 1226, governs Petitioner's detention. Mesidor v. Moniz, No. 26-cv-12915, 2026 WL 2333634, at *1 (D. Mass. Aug. 12, 2026) (collecting cases). "That Petitioner is subject to mandatory detention under § 1225(b) 'is clearly correct as a matter of statutory construction.'" Id. (quoting Galicia v. Lyons, No. 26-cv-11468, 2026 WL 1847046, at *1 (D. Mass. June 26, 2026)).

The Court, however, agrees with Petitioner that due process entitles him to a bond hearing. As a majority of other sessions of this Court have found, the detention of a noncitizen originally detained under § 1225(b) and then paroled into the United States pursuant to § 1182(d) "is subject to the Fifth Amendment's due-process protections." Rincon v. Hyde, 810 F. Supp. 3d 101, 113 (D. Mass. 2025); Cardoso v. Hyde, No. 25-cv-13935, 2026 WL 468200, at *2 (D. Mass. Feb. 19, 2026) (finding that petitioner who had lived in the United States for one and a half years under humanitarian parole and was in removal proceedings was not seeking initial entry and had "full due process rights"); Alves de Souza v. Moniz, No. 25-cv-13334, ECF No. 12 (D. Mass. Dec. 1, 2025) (granting a bond hearing based on finding that petitioner subject to § 1225(b) detention after being paroled pursuant to § 1182(d) was still entitled to due process protections); Mesidor, 2026 WL 2333634, at *2 (collecting cases); but see Galicia, 2026 WL 1847046, at *2-5 (finding, under similar circumstances, that mandatory detention did not violate due process), Guaranda Macias v. Moniz, No. 26-cv-10677 (D. Mass. Mar. 5, 2026), Dkt. No. 8 (same). Several other courts have also decided that individuals in Petitioner's position are

entitled to due process and a bond hearing. See, e.g., Al-Thuraya v. Warden, Orange Cnty. Corr. Facility, 809 F. Supp. 3d 135, 141–45 (S.D.N.Y. 2025) (collecting cases, examining Supreme Court precedent, concluding that "entry-fiction exception is inapplicable," and ordering a bond hearing).

"[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent," Zadvydas v. Davis, 533 U.S. 678, 693 (2001); see Mathews v. Diaz, 426 U.S. 67, 78 (1976) ("[A]ll persons, aliens and citizens alike, are protected by the Due Process Clause . . . ."), and while the Supreme Court has found that the sovereign prerogative "to admit or exclude" noncitizens, Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (quoting Landon v. Plasencia, 459 U.S. 21, 32 (1982)), means that noncitizens "at the threshold of initial entry," id. at 107, have no constitutional due process rights in relation to "the procedures to be followed in determining whether [they] should be admitted," id. at 139, that narrow exception in relation to admission procedures has never been read to deprive noncitizens at the threshold of initial entry of all due process protections, see Al-Thuraya, 809 F. Supp. 3d at 142–43. The relief Petitioner seeks here—freedom from indefinite deprivation of physical liberty—is "in the dead center of the Fifth Amendment's protections," and like "the vast majority of other courts to address [this issue]," the Court concludes that Petitioner's detention must comport with constitutional due process. Id. at 143 (collecting cases).

Courts apply a three-part balancing test to determine "whether government conduct in the deportation process violates the Due Process Clause." Cardoso, 2026 WL 468200, at *2 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). The three factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

With respect to the private interest factor, Petitioner has a substantial interest at stake. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects," Zadvydas, 533 U.S. at 695, and "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," Addington v. Texas, 441 U.S. 418, 425 (1979). Petitioner has been detained since June 28, 2026, [Resp. at 3], and has therefore experienced a significant deprivation of liberty. The first factor weighs heavily in his favor.

The risk of erroneous deprivation similarly weighs in Petitioner's favor. There is a serious risk of erroneous deprivation to a detainee such as Petitioner who has been "denied any opportunity to be heard regarding his confinement," Destino v. FCI Berlin, No. 25-cv-00374, 2025 WL 4010424, at *13 (D.N.H. Dec. 24, 2025), and who has received essentially "no meaningful safeguards" around the deprivation of his interests, Sorosh v. Wofford, No. 26-cv-00409, 2026 WL 323058, at *4 (E.D. Cal. Feb. 6, 2026); see also Mesidor, 2026 WL 2333634, at *2 ("The risk of erroneous deprivation is high where, as here, the noncitizen has no procedural mechanism to challenge his detention."). Petitioner was arrested and his parole revoked without any notice or an opportunity to be heard, and Respondents have put forth no evidence that he is a flight risk or danger to the community. See generally [Resp.].

Finally, the government has only a weak interest in keeping Petitioner detained without a bond hearing. "Although bond hearings necessitate some administrative burden, the cost of

providing a bond hearing is minimal." Cardoso, 2026 WL 468200, at *3 (citing Rincon, 810 F. Supp. 3d at 116). Accordingly, the Mathews factors weigh in favor of Petitioner and, therefore, his continued detention without a bond hearing violates his due process rights under the Fifth Amendment.

## III. CONCLUSION

For the foregoing reasons, Petitioner's motion for leave to amend his petition for habeas corpus, [ECF No. 10], and Amended Petition, [ECF No. 10-1], are both **GRANTED**. Respondents are **ORDERED** to provide Petitioner with a bond hearing within 10 days of this order. Respondents are **ORDERED** to file a status report within 14 days of this order stating whether Petitioner has been granted bond, and, if his request for bond was denied, the reasons for that denial.

**SO ORDERED.**

September 14, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE